# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

|  |  |  |
|---|---|---|
| | § | |
| **CERTAIN UNDERWRITERS AT** | § | |
| **LLOYD'S, LONDON SUBSCRIBING TO** | § | |
| **POLICY NUMBERS RH00010, RH00011** | | |
| **AND RH00012** | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| **v.** | § | **Case No. 3:19-cv-823-J-34JRK** |
| | § | |
| | § | |
| **ENVIRONMENTAL HOUSE WRAP, INC., a** | § | |
| **Florida corporation, CALATLANTIC** | § | |
| **GROUP INC., a Delaware corporation,** | § | |
| **Successor by Merger to the former** | § | |
| **CalAtlantic Group, Inc., which was Successor** | § | |
| **by Merger to THE RYLAND GROUP, INC.,** | § | |
| **a Maryland corporation, and BISCAYNE** | § | |
| **BAY HOMEOWNERS ASSOCIATION, INC.** | § | |
| **a Florida non-profit corporation;** | § | |
| **Defendants.** | § | |

## PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT RELIEF

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NUMBERS RH00010, RH00011, and RH00012 ("Underwriters"), and pursuant to 28 U.S.C. §§ 2201, 2202 and Federal Rule of Civil Procedure 57, file this First Amended Original Complaint and Declaratory Judgment Action against ENVIRONMENTAL HOUSE WRAP, INC. ("Environmental"), CALATLANTIC GROUP, INC. and THE RYLAND GROUP, INC. (collectively "Ryland") AND BISCAYNE BAY HOMEOWNERS ASSOCIATION, INC. (the "Association") (collectively "Defendants").

## NATURE OF ACTION

Underwriters seek declaratory judgment relief pursuant to 28 U.S.C. §§ 2201, 2202 for the purposes of determining the rights and obligations, if any, relative to Policy Nos. RH00010, RH00011, and RH00012 for alleged damages due to an insured subcontractor's allegedly defective work, as more fully set forth in Case No. 16-2016-CA-003462-O; *Biscayne Bay Homeowners Association, Inc. v. Evergreen Visibility, LLC et al*; In the Circuit Court of the Fourth Judicial Circuit In and For Duval County, Florida ("Underlying Lawsuit").[1] An actual, immediate controversy exists among the parties regarding whether coverage is afforded under the subject insurance policies for the claims and alleged damages that are the subject of the Underlying Lawsuit.

## PARTIES

1.      Plaintiff is Certain Underwriters at Lloyd's, London subscribing to Policy Numbers RH00010, RH00011, and RH00012. Plaintiff is a foreign citizen, located in England. Plaintiff Underwriters request that this Court declare the rights and obligations of the parties under the insurance policies pursuant to 28 U.S.C. §2201 and 2202, finding that Underwriters owe no duty to defend or to indemnify the named insured, Environmental, and the putative additional insured, Ryland, under said Policies in connection with the allegations made against them in the Underlying Lawsuit.

2.      Defendant Environmental House Wrap, Inc. is a Florida corporation with its principal place of business located at 13218 Huguenot Lane, Jacksonville, Florida 32225-1214.

---

[1]      *See* copy of Biscayne Bay Homeowners Association, Inc.'s *Fourth Amended Complaint* and Demand for Jury Trial filed in the Underlying Lawsuit, attached as **Exhibit A**; *see also* copy of the *Ryland's Amended Third Party Complaint* filed in the Underlying Lawsuit, attached as **Exhibit B**.

Environmental House Wrap, Inc. is the named insured under the policies of insurance issued by Plaintiff, and is a Third-Party Defendant and Defendant in the Underlying Litigation. Environmental House Wrap, Inc. can be served by serving its owner John R. Averitt at 13218 Huguenot Lane, Jacksonville, Florida 32225-1214, or wherever he may be found.

3.      Defendant Biscayne Bay Homeowners Association, Inc. is a Florida nonprofit homeowners association with its principal place of business in Jacksonville, Florida. Biscayne Bay Homeowners Association, Inc., can be served by serving its registered agent at Interlaced Property Solutions, LLC, c/o Interlaced Property Solutions, LLC, 5991 Chester Ave., #203, Jacksonville, Florida 32217, or wherever it may be found. As the plaintiff in the Underlying Lawsuit, the Association is an indispensable, necessary and/or interested party to this action. The Association was made a party to this declaratory action in order that it is bound by the declaratory judgment. If the Association agrees to be bound by any declaratory judgment entered in this matter, no further response to the declaratory judgment action will be required of the Association.

4.      Defendant CalAtlantic Group, Inc. a Delaware corporation, with its principal place of business in Miami, Florida, is Successor by Merger to the former CalAtlantic Group, Inc., which was Successor by Merger to The Ryland Group, Inc., a Maryland corporation with its principal place of business in Maryland. CalAtlantic Group, Inc. can be served by serving its registered agent, CT Corporation System, 1200 S. Pine Island Rd., Plantation, Florida 33324, or wherever it may be found. Ryland can be served by serving Larry T. Nicholson at its principal address of 15360 Barranca Parkway, Irvine, CA 92618, or wherever it may be found. Ryland is a developer and general contractor of multi-family residential housing units. Ryland entered into a construction contract with Environmental, a subcontractor, to perform certain construction

services for the Association's 24-townhome project, located between 1601-1915 Biscayne Bay Circle, Jacksonville, Florida (the "Project").

## JURISDICTION AND VENUE

5.     The United States District Court for the Middle District of Florida, Jacksonville Division, has diversity jurisdiction over this matter because Plaintiff and Defendants have diverse citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. §1332(a). Diversity jurisdiction is determined by the facts on the date the complaint is filed. *Grupo Dataflux v. Atlas Global Grp.*, 541 U.S. 567, 570-71 (2004); *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991).

6.     Plaintiff Certain Underwriters at Lloyd's, London subscribing to Policy Numbers RH00010, RH00011, and RH00012 is a citizen of London, England, a foreign state. The underwriting schedule for each individual Policy is below, and Plaintiff further pleads for diversity jurisdiction the identity and citizenship of each entity as follows:

   a.  **Policy RH00010** (April 1, 2006 to August 1, 2006) is underwritten 100% by Wellington Underwriting Agencies, Ltd. (Syndicate 2020) ("Wellington") Wellington was acquired by Catlin Underwriting Agencies Limited (Syndicate 2003) ("Catlin") in 2006. Catlin was acquired by XL Group plc in 2015. Then, in 2018, XL Group was acquired by AXA, now called AXA XL. AXA XL is a corporate organization, organized under British law, having no individual or other names or members insuring the risk. AXA XL is incorporated in and domiciled in the United Kingdom, which is also its principal place of business. At the time of filing the Original Complaint, the Syndicate securing Policy RH0010 was a corporate entity incorporated in and domiciled in the United Kingdom, which is also its principal place of business.

b. **Policy RH00011** (August 1, 2006 to August 1, 2007) is underwritten as follows: 40% Wellington Underwriting Agencies, Ltd (Syndicate 2020)("Wellington"), 22.5% Aspen Managing Agency Limited (Syndicate 4711) ("Aspen"), 25% Catlin Underwriting Agencies Limited (Syndicate 2003) ("Catlin"), and 12.5% Canopius Managing Agents Limited (Syndicate 4444) ("Canopius"). Wellington, Catlin, Aspen and Canopius are corporate organizations, organized under British law, having no individual or other names or members insuring the risk. Wellington, Aspen, Catlin, and Canopius are incorporated in and domiciled in the United Kingdom, which is also each of their principal places of business. At the time of filing this Original Complaint, the Syndicates securing Policy RH0011 were corporate entities incorporated in and domiciled in the United Kingdom, which is also each of their principal places of business.

c. **Policy RH00012** (August 1, 2007 to August 1, 2008) is underwritten as follows: 50% Catlin Underwriting Agencies Limited (Syndicate 2003), 30% Aspen Managing Agency Limited (Syndicate 4711), and 20% Canopius Managing Agents Limited (Syndicate 4444). As stated above, Catlin, Aspen and Canopius are corporate organizations, organized under British law, having no individual or other names or members insuring the risk. Catlin, Aspen and Canopius are incorporated in and domiciled in the United Kingdom, which is also each of their principal places of business. At the time of filing this Original Complaint, the Syndicates securing Policy RH0012 were corporate entities incorporated in and domiciled in the United Kingdom, which is also each of their principal places of business.

7.    As of the date the Plaintiff filed the Original Complaint, no syndicate subscribing to Policy Numbers RH00010, RH00011, and/or RH00012 was a citizen or resident of, or had its

principal place of business in Delaware or Florida; but rather each are corporate organizations incorporated in and domiciled in the United Kingdom, under the laws of the United Kingdom, which is also their principal place of business.

8.      There is complete diversity. Each Defendant is a citizen of and has a principal place of business diverse from the Plaintiff.

9.      In a suit for declaratory relief, the amount in controversy is measured by the value of the object of the litigation, the extent of the injury to be prevented, or the value of the right to be protected. *Farkas v. GMAC Mortg., L.L.C.,* 737 F.3d 338, 341 (5th Cir. 2013). The value here is the potential cost of defending and indemnifying the Defendants from the Underlying Lawsuit, which would far exceed $75,000.

10.     Under 28 U.S.C. §1390 and 1391, venue is proper in the United States District Court for the Middle District of Florida, Jacksonville Division. Not only is the Underlying Lawsuit pending in Duval County, Florida, but "a substantial part of the events … giving rise to the claim occurred" in this District. 28 U.S.C. §1391(a)(2).

11.     All conditions precedent to filing this action have been performed or have been waived.

## UNDERLYING LAWSUIT

12.     ***UNDERLYING LAWSUIT***. On May 20, 2016, the Association filed Case Number 16-2016-CA-003462-O, Division CV-D, naming CalAtlantic Group, Inc., successor by merger to The Ryland Group, Inc., alleging construction defects and damages at the Project. The Association filed several Amended Complaints, filing its Third Amended Complaint naming Environmental (a subcontractor of Ryland) on September 19, 2018. The Association most

recently filed its Fourth Amended Complaint ("Complaint") on May 2, 2019.[2] This Complaint includes allegations related to the Calatlantic assigned claims, including that, "[a]t the time the Townhomes were built, the Ryland Group, Inc.'s standardized subcontract forms titled (1) Subcontractor Agreement General Terms, and (2) Subcontractor Insurance Requirements.." Further, that "pursuant to their subcontracts, each of the CALATLANTIC SUBCONTRACTORS are and were required to indemnify, defend, and hold harmless, The Ryland Group, Inc. and CALATLANTIC as its successor by merger, from all claims that arise from or result from the performance of their work. Each…was and is required to obtain liability insurance and name The Ryland Group, Inc. and CALATLANTIC…as an additional insured on its insurance policies."[3] The Complaint states that CalAtlantic reached a settlement with the Association, including a cash payment and an assignment to the Association of all of CalAtlantic's claims against the subcontractors, and including claims for failure to defend, indemnify and hold harmless CalAtlantic.[4]

13.     The Association's Complaint pleads that "[t]his is an action for damages arising from the defective construction and sale of the individual units and common areas of the Biscayne Bay Townhomes located in Duval County, Florida…caused by the parties responsible for the development and construction of the townhomes."[5] The Association brings this action for defects and damages affecting the exterior walls, window penetration, roofing systems, drywall, paint, sheathing, framing, lath, site work, and other elements affecting the Association's matter of common interest; and states that the Association is the lawful representative of the unit owners of

---

[2]     See **Exhibit A** (The Fourth Amended Complaint states that the Association files suit, "…as an assignee of CALATLANTIC GROUP, INC. a Delaware corporation, successor by merger to the former CalAtlantic Group, Inc., which was successor by merger to The Ryland Group, Inc., a Maryland corporation…").

[3]     **Exhibit A** at pp. 19-24; ¶¶86-109.

[4]     *Id*.

[5]     **Exhibit A** at p. 3, ¶1.

the 24 buildings comprising the townhomes and all common areas, improvements, and appurtenances incident thereto.[6]

14.     The Complaint alleges that Ryland served as the builder and developer of the subject property, and that Calatlantic Group Inc. was successor by merger to the former CalAtlantic Group, Inc., which was successor by merger to Ryland.[7] Further, that CalAtlantic entered into subcontracts with certain subcontractors to complete the original construction of the Property.[8]

15.     The Association's Complaint pleads that Environmental served as a subcontractor for the construction of the townhomes and had responsibility for its entire scope of work, including but not limited to building wrap, flashing, and building envelope waterproofing system at all 24 buildings.[9]

16.     Against Environmental, the Complaint alleges negligence causing damage to the townhomes including, but not limited to, water damage, property damage, and damages to the work and property of other persons or entities, necessitating the need for repairs, including loss of use.[10] Against Environmental, the Complaint also alleges a building code violation pursuant to Florida statute §553.84; stating that Environmental knowingly violated the building code by improper construction and installation of the building wrap, flashing, and building envelope waterproofing system. The Complaint pleads community wide water intrusion to other components of the roofs and other components of the building including, but not limited to the building exteriors, building framing, building lath, building sheathing, drywall, paint, interior and exterior finishes, and other components of the townhomes.[11]

---

[6]         **Exhibit A** at p. 5, ¶12.
[7]         **Exhibit A** at p. 5, ¶¶13-14.
[8]         **Exhibit A** at p. 5, ¶15.
[9]         **Exhibit A** at p. 8, ¶¶28-29.
[10]        **Exhibit A** at p. 30, ¶¶141-147.
[11]        **Exhibit A** at pp. 45-47, ¶¶228-237.

17.     As an assignee of CalAtlantic, the Association further alleges negligence against the subcontractors[12], violation of the building code against Environmental[13], and breach of contract against Environmental[14].

18.     The Complaint alleges that damages are in excess of $15,000.00 and continuing, including the costs to investigate the property and develop and scope/plan to repair; costs to repair and oversee the repairs of the defects and resulting damages; costs to repair defects that may cause future damages; loss of use, storage and temporary housing costs caused by the defect and required during repairs; incidental and consequential damages; costs incurred to prosecute the law suit; and prejudgment interest.[15]

19.     ***RYLAND'S THIRD PARTY ACTION***. On November 18, 2014, Ryland and Environmental entered into a subcontract Agreement for Environmental's work at the Project. On November 29, 2016, Ryland filed a third party action naming Environmental and multiple other subcontractors in the Underlying Lawsuit. Environmental made an appearance in the lawsuit via counsel on May 9, 2017. Ryland later filed an Amended Third Party Complaint on July 20, 2017.[16]

20.     Ryland asserts five counts against Environmental including breach of contract, negligence, contractual indemnification, common law indemnification, and violation of Florida Statute section 553.84.[17] Ryland alleges that "[a]s a direct and proximate result of these breaches, Ryland has suffered and will continue to suffer damages, including, but not limited to, its costs to

---

[12]     **Exhibit A** at pp. 75-76, ¶¶385-388.
[13]     **Exhibit A** at pp. 102-103, ¶¶531-537.
[14]     **Exhibit A** at pp. 103-104, ¶¶538-552.
[15]     **Exhibit A** at pp.17-18, ¶82.
[16]     **Exhibit B.**
[17]     **Exhibit B** at ¶¶129-157.

investigate and defend the underlying action, as well as any amounts for which it may be held liable to Plaintiff."[18]

21.     **SETTLEMENT**. The Association settled its claims against CalAtlantic Group, Inc. successor by merger to the former CalAtlantic Group, Inc., successor by merger to The Ryland Group, Inc. The parties signed a Confidential Settlement Agreement and Release in April 2019. Plaintiff filed a notice of voluntary dismissal with prejudice as to these parties on April 25, 2019. Ryland has not filed a dismissal of its Third Party claims against Environmental.

## NOTICE PROVIDED TO UNDERWRITERS

22.     The Project was completed between 2005 and 2008. Biscayne Bay sent a Notice of Claim Pursuant to Florida Statute §558.004 to Ryland dated May 17, 2016, which predates the filing of the lawsuit (filed on May 20, 2016). This Notice included an engineering report dated five (5) months earlier (January 25, 2016).

23.     Ryland provided its first formal notice of the suit to Underwriters three (3) years later in January 2019. Counsel for the Association sent a letter addressed to Rickmasters, LLC dated January 31, 2019. This letter made its way to a representative of Underwriters on/about February 6, 2019. The notice letter tendered the defense and indemnity on behalf of Environmental, and also requested policy information from Underwriters pursuant to Fla. Stat. §627.4137 and/or Fla. Stat. §626.9372.

24.     This notice letter sent in January 2019 was the first notice of the claim and/or suit provided to Underwriters.

25.     Underwriters immediately commenced an investigation, and sent reservation of rights letters to both Environmental and Ryland dated April 19, 2019. Since this time, Underwriters has continued efforts to investigate for purposes of determining coverage under the Policies.

---

[18]     *Id.*

## UNDERWRITERS' POLICIES

26.     Policy Nos. RH00010 (April 1, 2006 to August 1, 2006), RH00011 (August 1, 2006 to August 1, 2007), and RH00012 (August 1, 2007 to August 1, 2008) ("Policies") are commercial general liability policies issued under a "group marketing" plan and provide coverage to specific contractors of The Ryland Group, Inc. electing such coverage. The Named Insured, Environmental House Wrap, Inc. elected to join the general liability insurance plan on/about March 23, 2006. The Policies provide commercial general liability coverage.[19]

27.     The Policies are subject to the following, differing Coverage Forms, and all incorporate different endorsements; however all Policies provide coverage for products completed operations.

| RH00010: | GG 00 01 01 96 |
| RH00011: | AMR 02 07 06 |
| RH00012: | AMR 02 07 06 |

                                        *          *          *

The Policies includes Endorsement 1, ***Named Insured Endorsement***[20]:

> It is agreed that the Named Insured listed on the declarations as the Specified Subcontractors shall include only the following, and each shall be a Named Insured under the policy:
>
>> Those subcontractors performing work in connection with the construction of single family dwellings and town homes who are not otherwise insured (uninsured), or are inadequately insured (underinsured) for Commercial General Liability and who are reported to the company by the Homebuilder as required by the monthly reporting endorsement.
>
> …

The Policies include Endorsement 2, ***Identification of the Homebuilder***[21]:

---

[19]     Policy No. RH00010 is attached as **Exhibit C**, RH00011 is attached as **Exhibit D**, and RH00012 is attached as **Exhibit E**.

[20]     Although they read the same, Policy RH00010 includes endorsement (3-1-2004); and Policies RH00011 and RH00012 include endorsement (7/06).

[21]     Policy RH00010 includes endorsement (3-1-2004); Policy Nos. RH00011 and RH00012 include endorsement (7/06).

> The Homebuilder is:   The Ryland Group, Inc. and its subsidiaries and any partnership in which all partnerships are owned or controlled by The Ryland Group, Inc., R.H. of Texas, L.P. Scott Felder, Limited Partnership; and Ryland Homes 24025 Park Sorrento, Suite 400 Calabasas, CA 91302

The Policies include Endorsement 3, *Additional Insured – Homebuilder*[22]:

> ADDITIONAL INSURED – Homebuilder
> The endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE
>
> Subject to the terms and conditions of this endorsement, the Homebuilder described in Endorsement 2 is included within the definition of Section II – Who is an Additional Insured: as an insured but only with respect to liability for …"property damage"…caused, in whole or in part, by:
> 1.   The acts or omissions of the named insured; or
> 2.   The acts or omissions of those acting on behalf of the named insured;
> And then only with respect to work performed by the named insured for the Homebuilder on the "designated construction project."
>
> The Homebuilder described in Endorsement 2 agrees to be bound by the terms and conditions of the policy and has reviewed said terms and conditions and recognizes that the intent of the policy is as follows:
>
> Losses or damages from … "property damage"… resulting from work performed by a named insured during the policy period are covered under this insurance as contained within attached policy and endorsements. This is both for claims during ongoing operations as well as completed operations related to work performed during the policy period.
>
> Losses or damages to "your work" of a named insured are not covered by this policy. Quality of the work itself (workmanship) or quality of materials used are not covered by this policy.
>
> Defense will not be provided and expenses will not be advanced for any claims that do not arise from the work of the named insured.

Additionally, the Policies all include an endorsement for *Limitation of Coverage to Designated Premises or Project*[23]. This endorsement includes a Schedule stating that it applies to job sites and/or designated construction projects for the Homebuilder in Florida. The endorsement further states that "this insurance applies only to …"property damage"… arising out of: … The project shown in the Schedule."

*     *     *

---

[22]   Policy RH00010 includes endorsement (4-1-06); Policy Nos. RH00011 and RH000012 include endorsement (7/06).

[23]   Policy RH00010 includes endorsement (CG 21 44 11 85); Policy Nos. RH00011 and RH00012 include endorsement (CG 21 44 07 98).

The Policies include different coverage forms. **Section 1.a.** is the same, but **Section 1.b.** is changed (or endorsed) in each policy as set forth below:

> **SECTION I - COVERAGES**
> **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
> **1. Insuring Agreement**
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of . . ."property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for . . . "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
> > (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and
> > (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B. . .
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.
> *      *      *
>
> **Policy RH00010**:[24]
> b. This insurance applies to. . ."property damage" only if:
> (1) The …"property damage" is caused by an "occurrence" that takes place in the coverage territory;
> (2) The . . ."property damage":
> > (i)  occurs during the policy period, or
> > (ii) covered under the "products-completed operations hazard", occurs during the "Contractors products-completed operations period".
>
> > "Contractors products-completed operations period" means the period of time allowed by the applicable State law for claims or "suits" to be brought against you up to a maximum of ten years from the date "you work" was completed.
>
> > Any changes that act to extend the period of time allowed by the applicable state law for claims or "suits" to be brought against you, are deemed not covered hereon.

Also, in RH00010, the ***Occurrence Trigger Endorsement*** adds the following sentence to Section I, Coverage A, 1.b (2):

> With respect to "products-completed operations hazard," it is agreed and understood that this policy covers only claims for …"property damage" which arise out of work completed within the term of this policy, regardless of whether that work needed or may need service, maintenance, correction, repair or replacement. Subject to the above, the date of loss shall be the date "your work" was completed.

---

[24]    Policy RH00010 includes endorsement (4-1-06) titled "Products-Completed Operations Hazard Endorsement, and replaces Section 1 – Coverages, Coverage A, paragraph 1.b (2).

\*      \*      \*

**Policy PH00011**[25]

b. This insurance applies to. . ."property damage" only if:

(1) The …"property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The . . ."property damage":

      (i) Occurs during the policy period, or

      (ii) With respect to "products-completed operations hazard",

            (a) The … "property damage" arises out [sic] "your work" completed during the policy period, regardless of whether that work needed or may need service, maintenance, correction, repair or replacement; and

            (b) The … "property damage" occurs during the "contractor's products-completed operations period".

"Contractors products-completed operations period" means the period of time allowed by applicable state law for a claim or "suit" to be brought against you, or ten (ten) years from the date "your work" was completed, whichever is earlier.

Subject to the above, with respect to the "products-completed operations hazard" the date of loss shall be the date "your work" was completed.

Any changes that act to extend the period of time allowed by the applicable state law for claims or "suits" to be brought against you, are deemed not covered here.

…

\*      \*      \*

**Policy PH00012**[26]

b. This insurance applies to. . ."property damage" only if:

(1) The …"property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The . . ."property damage":

      (i) Occurs during the policy period, or

      (ii) with respect to "products-completed operations hazard",

            (a) The … "property damage" arises out "your work" completed during the policy period, regardless of whether that work needed or may need service, maintenance, correction, repair or replacement;  and

            (b) The … "property damage" occurs during the "contractor's products-completed operations period".

"Contractors products-completed operations period" means the period of time allowed by applicable state law for a claim or "suit" to be brought against you, or ten (ten) years from the date "your work" was completed, which is earlier.

…

---

[25]    Policy RH00010 includes this language in Coverage Form AMR 02 07 06; there is no endorsement included in this policy that amends/replaces Section 1, Coverage A, paragraph 1.b (2).

[26]    Policy RH00012 includes endorsement (COL-1 906 08)), which amends Section 1 – Coverages, Item 1 b.

Subject to the above, with respect to the "products-completed operations hazard" the date of loss shall be the date "your work" was completed.

Any changes that act to extend the period of time allowed by the applicable state law for claims or "suits" to be brought against you, are deemed not covered here.

. . .

*     *     *

## 2. Exclusions
This insurance does not apply to:

### a.   Contractual Liability
. . ."property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or
(2) Assumed in a contract or agreement that is "insured contract", provided the. . ."property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of. . ."property damage", provided:
    (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and
    (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.
…

### l. Damage To Your Work[27]

***Policy RH00010***
"Property damage" to "your work" arising out of it or any part of it regardless of the time of the "occurrence". This exclusion also applies to "property damage" to the work of any subcontractor of the named insured.

***Policies RH00011 and RH00012***
"Property damage" to "your work" arising out of it or any part of it. This exclusion applies regardless of whether "your work" has been completed.

### m. Damage To Impaired Property Or Property Not Physically Injured
"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

    (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
    (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

---

[27]   This exclusion reads differently in the Policies as stated above.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

*     *     *

**SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or "suit" against an insured we defend:

    a. All expenses we incur.

    . . .

    d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

    e. All costs taxed against the insured in the "suit".

    f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

    g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

    …

These payments will reduce the limits of insurance.

…

*     *     *

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

…

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

. . .

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

    (1) How, when and where the "occurrence" or offense took place;

    (2) The names and addresses of any injured persons and witnesses; and

    (3) The nature and location of the injury or damage arising out of the "occurrence" or offense.

**b**. If a claim is made or "suit" is brought against any insured, you must:

    (1) Immediately record the specifics of the claim or "suit" and the date received; and

    (2) Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

    **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

    **(2)** Authorize us to obtain records and other information;

    **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

…

                        \*          \*          \*

## SECTION V - DEFINITIONS

. . .

"Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

> **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
> **b.** You have failed to fulfill the terms of a contract or agreement;
>
> if such property can be restored to use by:
> **a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or
> **b.** Your fulfilling the terms of the contract or agreement.

. . .

"Insured contract" means:

> . . .
> f. That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for. . .or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement. …

. . .

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .

"Products-completed operations hazard":

a.  Includes all … "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

  (1)  Products that are still in your physical possession; or
  (2)  Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

    (a)  When all of the work call for in your contract has been completed.
    (b)  When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
    (c)  When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

     Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

"Property damage" means[28]:

---

[28]  Policies RH00011 and RH00012 include this definition. Policy RH00010 incorporates endorsement 5 (3-1-04), which includes an amendment to the definition of "property damage" that is similar.

a. Physical injury to that portion of tangible property that is not the "named insureds work" including all resulting loss of use of that property. Any physical injury to the "named insureds work" arising out of the repair or remediation of the "named insureds work" or the removal of work performed by others to make repairs to the "named insureds work" is not included within this definition of "property damage." All loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

b. Loss of use of tangible property that is not physically injured and is not the "named insureds work". All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. Diminution of value of any structure or any portion of a structure as a result of any work that the named insured has performed or failed of perform is not included within this definition of "property damage."

For purposes of this definition only, "named insureds work" is defined as the component of the home that is the result of the named insured's construction efforts, including without limitation the fabrication, construction, installation, or removal of any component of the "designated construction project" whether the work was performed by the named insured or on the named insured's behalf.

. . .

"Suit" means a civil proceeding in which damages because of "bodily injury" "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

. . .

"Your work":

a. Means:
(1) Work or operations performed by you or on your behalf; and
(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes
(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and
(2) The providing of or failure to provide warnings or instructions.

\*        \*        \*

Exclusion #8
**PUNITIVE OR EXEMPLARY DAMAGE EXCLUSION**[29]

In consideration of the premium charged, it is agreed that this policy shall not apply to a claim of or indemnification for punitive or exemplary damages.

Punitive or exemplary damages are damages in excess of the amount needed to compensate for bodily injury or property damage which are imposed in order to punish the INSURED due to the particular wanton, willful or malicious character of the

---

[29] This exclusion is endorsed to Policy RH00010 only. Policies RH00011 and RH00012 do not incorporate a punitive/exemplary damage exclusion endorsement.

INSURED'S wrongdoing in order to make an example of or to punish the INSURED. Punitive or exemplary damages also include any damages awarded pursuant to state in the form of double, treble, or other multiple damages in excess or compensatory damages.

If suit is brought against the INSURED for a claim filing within the coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then the Company will afford a defense to such action; however, the Company shall have no obligation to pay for any costs, interest, or damages attributable to punitive or exemplary damages.

*        *        *

**Exclusion #18**
**EXCLUSION – MOLD and FUNGUS[30]**

This insurance does not apply to any … "property damage"…or any physical loss of or damage to property nor do we have any duty to defend any claim, suit, action, demand, arbitration, alternative dispute resolution arising from, caused by or contributed to, directly or indirectly, by the presence of (a) mold, (b) any material, product, building or building component containing any mold or contributing to the growth or mold; (c) any sold, or liquid substance, vapor, fume or gas arising from or generated by any mold. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

We do not cover any such claim, suit action, demand, arbitration, alternative dispute concerning mold regardless of any other cause, event, happening, occurrence that may have also caused, contributed to or aggravated the injury or damage.

This insurance does not cover any loss, cost or expense incurred by any person or entity (including any governmental organization) to test for, monitor, remove, treat or in any way respond to the actual or potential presence of mold.
"Mold" includes but is not limited to mold, mildew, fungi, bacteria, mushrooms, yeasts, dry rot, organisms or micro-organisms of any kind including any spores or other reproductive body produced by or arising out there from.

*        *        *

## <u>DECLARATORY JUDGMENT ACTION</u>

28.    Underwriters reassert Paragraphs 1 through 26 above, which are incorporated herein by reference as if set forth in their entirety.

29.    There is an actual, immediate, existing and present controversy among the parties to this action regarding whether coverage is afforded under the Policies, for defense and indemnity, for the claims made and damages sought in the Underlying Lawsuit.

---

[30]    This specific exclusion is endorsed to Policy RH00010 only. The Coverage forms in Policies RH00011 and RH00012 include a similar Mold and Fungus exclusion.

30.     Underwriters now seek a declaratory judgment finding that they have no duty to defend or indemnify the named insured, Environmental, or the putative additional insured, Ryland, in the Underlying Lawsuit to the extent that there is no coverage under the Policies.

31.     Both Environmental and Ryland have either a claim or an interest which would be affected by this Declaration and thus are named as Defendants pursuant to Florida Statute §86.091.

32.     The Policies each require that "your work" be completed during the policy period, and that the "property damage" occurs during the "contractor's products-completed operations period". To the extent that Environmental's work was not completed during the policy period, there is no coverage. Environmental's coverage with Underwriters begins on April 1, 2006. The reported completion date for many of the townhomes does not fall within coverage under the Policies, and the first requirement of coverage is not met for each of these units. There is no coverage for the alleged damage to the homes where "your work" was completed before April 1, 2006, and Underwriters requests a declaration of no coverage on this sole basis.

33.     Also, to the extent that the damage is not "property damage" as defined by the Policies, there is no coverage to Environmental or Ryland, and Underwriters request a declaration of no coverage for all such damage. The Policies do not cover the "named insured's work."

34.     Moreover, Underwriters are also entitled to a declaratory judgment of no coverage to Environmental and Ryland based on late notice under the commercial general liability conditions in the Policies. Prejudice to the insurer is presumed when a policy makes compliance with a written notice provision a condition precedent to the insurer's liability. Here Underwriters has been substantially disadvantaged to (1) investigate the claim, (2) defend the claim, and (3) mitigate its potential damage through settlement or early repairs.

35.     Ryland provided notice to Underwriters of the lawsuit in January 2019, which is nearly three (3) years after Ryland was first provided notice by the Association. Environmental did not provide notice to Underwriters. It communicated with Underwriters via its defense counsel after a representative of Underwriters initiated communications in February 2019.

36.     Though Environmental has been represented by defense counsel appointed by Auto-Owners Insurance Company since May 2017, Underwriters have been prejudiced by the late notice. Specifically, prior to January 2019, the parties not only engaged in extensive discovery, but also underwent multiple rounds of settlement discussions and mediated the case on at least two (2) occasions. Underwriters were not privy to, and therefore prohibited from participation in these settlement discussions and mediations. Underwriters were unable to investigate the claim and participate in any discussions and/or mediations before January 2019.

37.     Moreover, the Association settled its claims against Ryland months before April 2019; assigning its claims to the Association. As a direct result of the late notice, Underwriters were not informed or any such discussion, and therefore not involved. To the extent that Ryland is an additional insured under the Policies, the Conditions state, "[n]o insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent." Therefore, in settling claims with the Association before providing notice of the claims and/or suit to Underwriters, there is no coverage to Ryland, as an additional insured under the Policies.

38.     Also, the Association has not made repairs at the property due to inability and/or lack of funds. This provides additional support for a finding of prejudice to Underwriters because had Underwriters been involved several years ago when suit was original filed, the early settlement negotiations may have been different and resulted in the opportunity for earlier repairs at the

property; thereby mitigating the alleged, extensive damage that resulted and now exists. Underwriters thereby request that this court issue a declaration of no coverage on this sole basis.

39.     Finally, to the extent that the punitive damage exclusion and the mold exclusions apply, there is no coverage and Underwriters requests a declaration of same on that basis.

40.     Based on each of the above, Underwriters have no duty to defend or indemnify Environmental or Ryland in the Underlying Lawsuit.

### **PRAYER FOR RELIEF**

WHEREFORE Certain Underwriters at Lloyd's, London subscribing to Policy Numbers RH00010, RH00011, and RH00012 respectfully requests that this Court grant declaratory judgment relief in favor of Underwriters barring coverage to Environmental and Ryland, and decreeing that Underwriters is not required to defend or indemnify Environmental and/or Ryland with respect to the Underlying Lawsuit, or to pay any damages that Environmental and/or Ryland may become legally obligated to pay as a result of the Underlying Lawsuit, and for all other relief to which Underwriters may be justly entitled.

Respectfully submitted,

HOLMAN FENWICK WILLAN

*/s/ Gerard J. Kimmitt, II*

**Gerard J. Kimmitt, II** *(pro hac vice pending)*
TBN: 11427500; Fed. Id No. 08454
jerry.kimmitt@hfw.com
**Susan H. Swanson** *(pro hac vice pending)*
TBN: 24038955; Fed. Id No. 37969
susan.swanson@hfw.com
HOLMAN FENWICK WILLAN
5151 San Felipe, Suite 400
Houston, Texas 77056
Telephone:  (713) 917-0888

Facsimile:  (713) 953-9470
**ATTORNEYS FOR PLAINTIFF**


**MURRAY, MORIN & HERMAN, P.A.**

*/s/ Christopher S. Morin*
_____

**John M. Murray**
Fla. Bar No.: 157325
jmurray@mmhlaw.com
**Christopher S. Morin**
Fla. Bar No.: 177600
cmorin@mmhlaw.com
**Mike Breen**
Fla. Bar No.: 84906
mbreen@mmhlaw.com
Murray, Morin & Herman, P.A.
101 E. Kennedy Blvd.; Suite 1810
Tampa, Florida 33602
Tel:  (813) 222-1800  x1803
Fax: (813) 222-1801
Web:  mmhlaw.com
**LOCAL COUNSEL FOR PLAINTIFF**